## MOYER *against* HINMAN.

The lien of a judgment on land is subject to the equitable rights of a party in the occupation thereof, under a prior contract to purchase the same from the judgment debtor.

The docketing of the judgment is not notice thereof to such purchaser; and payments subsequently made by him to the judgment debtor pursuant to his contract, without actual notice of the judgment, are valid as against its lien upon the land.

And where, while the purchaser of land by contract was in possession, a judgment was recovered against the vendor, and the land sold on an execution issued thereon and bid off by the plaintiff in the judgment, who transferred the sheriff's certificate to a third person, to whom the sheriff executed a deed; and the purchaser, after the sale on execution and before the sheriff conveyed, without actual notice of the judgment or the proceedings thereon, made payments pursuant to his contract to the judgment debtor; *Held*, in an action by the purchaser against the grantee in the sheriff's deed for a specific performance of the contract, that such payments were valid, and that the latter was bound to convey the land on being paid the amount due on the contract after applying the payments made to the judgment debtor.

Moyer *against* Hinman.

Payments made by such a purchaser to the judgment-creditor without notice after the execution of the sheriff's dced would be valid against the grantee therein. *Per* DENIO, J.

The recording of the sheriff's dced is not notice thereof to a party who contracted with the judgment debtor to purchase the land and entered into possession prior to the recovery of the judgment. *Per* DENIO, J.

Moyer *v.* Hinman, 17 Barb. 137, modified.

IN October, 1835, H. W. Schroeppel being the owner of two hundred and fifty acres of land, situate in Oswego county, contracted with the plaintiff to sell and convey to him a part of it containing sixty acres, at the price of $465; fifty dollars of the purchase price to be paid down, and the residue at or before the expiration of ten years with annual interest. By the contract it was agreed that the plaintiff should have immediate possession of the premises, and on payment of the purchase money, the same should be conveyed to him in fee by Schroeppel. The following spring the plaintiff entered into possession of the land mentioned in the contract, which was wild, and erected a house and commenced making other improvements thereon. From that time till the commencement of this action, he occupied and improved the premises.

In 1838, R. S. Corning recovered a judgment against Schroeppel in the supreme court, which then became a lien on the real estate of the latter, situate in Oswego county; and in 1844, an execution upon the judgment was issued to the sheriff of Oswego county, who, by virtue thereof, in August of that year, sold the premises contracted to the plaintiff, together with the residue of the two hundred and fifty acres, and gave the usual sheriff's certificate of sale to Corning, the plaintiff in the execution, who was the purchaser at the sale. A duplicate of this certificate was duly filed by the sheriff in the clerk's office of Oswego county. In August, 1845, Corning sold and assigned to the defendant the sheriff's certificate, and in the ensuing January the premises were conveyed to him by the sheriff, pursuant

to the sale and certificate. The sheriff's deed to the defendant was duly recorded in Oswego county, in February, 1846.

Intermediate the recovery of the judgment and the sale by virtue of the execution, the plaintiff made several payments to Schroeppel upon the contract; and in October, 1845, after the sale and assignment of the sheriff's certificate to the defendant, but before the execution of the sheriff's deed, he made a further payment to Schroeppel on the contract, of $224. When the plaintiff made these payments, he had no actual notice of the judgment or of the sale made by the sheriff.

Soon after the defendant received his deed, he notified the plaintiff and forbid his making further payments to Schroeppel, and offered to convey to him the premises on his paying to the defendant the amount unpaid upon the contract at the time of the sheriff's sale. This the plaintiff declined to do, and the defendant, in 1851, brought an action against him to recover possession of the premises. The plaintiff thereupon tendered to the defendant the amount due upon the contract after crediting the $224 paid Schroeppel after the sheriff's sale, and before he conveyed to the defendant and demanded a conveyance of the premises described in the contract; and the defendant declining to accept the amount and execute the deed, this action was instituted to compel him to do so, and to stay the suit commenced to recover possession of the premises. This action was tried before Mr. Justice Pratt without a jury, in 1852. He found the facts above stated, and decided that the payment made to Schroeppel in October, 1845, was not valid as against the defendant, and that the latter was entitled to demand and receive the amount owing on the contract at the time of the sheriff's sale, and he ordered judgment that the defendant convey the premises to the plaintiff, on his paying this amount. The plaintiff excepted, and the judgment having been affirmed by the supreme court at general

term in the 5th district, he appealed to this court. (For a report of the case in the supreme court, see 17 *Barb.*, 137.)

*Geo. F. Comstock*, for the appellant.

*L. Morgan*, for the respondent.

DENIO, J.   The counsel for the parties in this case agree that the plaintiff, being in possession under his contract at the time of docketing the judgment under which the defendant claims, is to be protected in equity as to his rights which existed at that time; and the position is so well established by authority as to have become an elementary doctrine in this branch of the law of real estate.   I consider it equally well settled that the docketing of a judgment against the vendor affords no notice of its existence, either actual or constructive, to the prior vendee of the judgment debtor.   Parties who deal with the debtor respecting his lands subsequently to the docketing of the judgment, are affected with notice.   Such persons may make themselves perfectly safe in that particular, by searching the docket book of judgments in the proper office; and they will, of course, abstain from purchasing if they find the land which they are proposing to buy, encumbered by a judgment.   So, it may be said, a party holding a .contract upon which payments remain to be made, may, before making such payments, examine for judgments against the vendor; but it would be an intolerable inconvenience to require this, where the payments, as is usually the case, are to be made annually or oftener; and should such examination ever be strict, the vendee would have to run the risk of an incumbrance intervening, while he was going from the office where the search was made to the residence of the vendor, to make the payment.   It has been repeatedly decided that the docketing of a judgment or the recording of a mortgage is no notice to a prior purchaser or mortgagee of the premises

3 KERN.—12

whose conveyance is on record, or of which notice was had, the object of the recording acts, and of the law requiring judgments to be docketed, being, it is said, to protect subsequent purchasers and incumbrancers against previous deeds, mortgages, &c., which are not recorded and of which they had no notice, and to deprive the holder of the prior unregistered conveyance or mortgage of the right which his priority would have given him at the common law. (*Cheesebrough* v. *Millard*, 1 *Johns. Ch. R.*, 409; *Stuyvesant* v. *Hall*, 2 *Barb. Ch. R.*, 151.) The plaintiff in this case being in possession under his contract, that circumstance was notice to all persons who might subsequently become interested in any way in the premises, not only of such possession, but of the terms of the contract and of all his existing rights under it.

In the view of a court of equity, his condition was like that of a party having a prior conveyance or lien which was duly recorded. When, therefore, Corning had recovered his judgment against Schroeppel, the situation of the respective parties was this: The plaintiff was the equitable owner of the land, subject to future payments to be made by him, and the judgment creditor had notice of his situation and of his rights; but the plaintiff had no notice and was not chargeable with notice of the lien of his creditor. The creditor had at law the right to acquire the legal title to the land by means of a sheriff's sale and a purchase by himself, but in equity his rights were limited to the future payments to be made by the plaintiff. But as the vendee had no notice of the judgment creditor's lien, and the creditor had full notice of the vendee's situation, it would seem to be reasonable that in order to intercept those payments and divert them from the vendor's hands into his own, the creditor ought at least, to inform the vendee of the existence of his lien and of his right to the unpaid purchase money. In accordance with this view, it was held, in a case in Maryland, that where the vendee, subsequently to the recovery of a judgment against

the vendor, but without actual notice thereof, had paid over a balance of the purchase money and taken a conveyance from the judgment debtor, such vendee was, in equity, entitled to be protected against the claim of the judgment creditor. (*Hampson* v. *Edelen*, 2 *Har. and Johns.*, 64.) And we have the deliberate judgment of the court of errors of this state upon the same point in an action at law. In *Parks* v. *Jackson* (11 *Wend.*, 442), Parks, the plaintiff in error, was in possession of a tract of land which had been purchased by one of these executory contracts and possession had been taken by the vendee upon the contract being executed, which was continued down to the time the controversy arose. Judgments were recovered against the devisee of the vendor, and afterwards the party holding under the vendee, without actual notice of the judgments, paid the whole purchase money, took a conveyance and conveyed to Parks. Then the judgment creditor sold the land on the judgment, obtained a sheriff's deed, and brought ejectment against Parks. The court of errors held that the plaintiff could not recover. The chancellor who alone dissented from the judgment, put his opinion on the ground that the remedy of Parks was in equity. There were a variety of other facts in this case, but they tend to strengthen the decision as an authority upon the point under consideration. The purchase money for the land was paid to, and the deed under which Parks held was executed by one Henry Franklin, to whom the devisees of the original vendor had conveyed the premises, and the judgments under which the plaintiff in the ejectment suit claimed, were against these devisees. The judgment creditor claimed that the conveyance to Henry Franklin was void as against the creditors of the grantors, and commenced a suit in chancery against the parties to that conveyance, and obtained a decree setting it aside for the alleged fraud, having, at the time of filing the bill, filed a notice of *lis pendens* in the county clerk's office. The payments were made and the deed under

which Parks held, was given pending that suit. It was scarcely contended that docketing the judgment against the grantors of Henry Franklin would alone enable the creditor to question the payments subsequently made; but it was insisted that the *lis pendens* affected the parties holding under the vendee in the executory contract, and that the payments were consequently made in their own wrong; and so the supreme court had decided. That judgment was reversed, the court of errors holding that neither the judgments, nor the *lis pendens* nor both of them, affected the vendees or impaired the effect of the payments or of the deed under which Parks held. This case, therefore, proves something more than that judgments docketed against the vendor do not affect payments subsequently made by the vendee, having no actual notice of the judgment. It establishes, in effect, that payments made by the vendee pursuant to an executory contract, are not to be considered as a fresh dealing with the vendor respecting the land; for if they were so, they would, when made, *pendente lite* be ineffectual against a decree determining that the party to whom they were made had no right to receive them, it being an established principle that the purchase of any interest in the subject in litigation, is subverted by the ultimate judgment, if adverse to the right of the party selling. The true inference from the case is that such payments are referable to the original contract, and are not the purchase of a further interest in the land.

If then, the payment made by the plaintiff to Schroeppel is not affected by the docketing of Corning's judgment, I am not aware of any principle upon which the sale upon the execution and the purchase of the premises by Corning, under which the defendant holds, can prejudice that payment. The sale converted the general lien into a particular one upon these premises. It was still but a lien; for any judgment creditor of Schroeppel might, notwithstanding, redeem the premises. But the consideration which, in my judgment, prevents its having the effect claimed for it, of cutting off

Moyer *against* Hinman.

the plaintiff's right to pay Schroeppel, is, that the *former* had no notice of the transaction, while Corning and the defendant must be considered as having full notice of the plaintiff's rights. Admitting that Schroeppel had no right to the money, and that Corning or the defendant had, either the plaintiff or the defendant must lose the money; and the rule in such cases is that the party shall suffer who, by his acts or omission, permitted the money to go into the hands of a party not entitled to it. The defendant could readily have informed the plaintiff of the judgment and of the sheriff's sale; and then if the plaintiff had chosen to pay to Schroeppel instead of refusing so to pay, or to take measures by bill of interpleader or otherwise, if threatened by a suit by Schroeppel, perhaps the payment would have been in his own *wrong*. As the case stands, he paid the money to the party holding his obligation for the payment without any notice that any other person had become interested in that contract, or had any right to the money which he had engaged to pay to Schroeppel.

The case does not call upon the court for a decision upon the question, whether if the defendant had obtained a conveyance from the sheriff before this payment was made, the plaintiff might not still have paid to Schroeppel until he had notice of such conveyance. Individually, I am of opinion that a vendee in possession under such a contract, may safely continue to pay to the vendor until he has notice that some other person has acquired an interest in the land or in the contract. If this is not so, the vendor may, in any case, make a secret conveyance of the land and continue to receive the purchase money from the vendee, and the latter will be without remedy if the vendor be insolvent. The recording of the conveyance would make no difference in the principle, for this is only constructive notice to subsequent purchasers and incumbrancers; and as we have seen, a payment pursuant to a prior executory contract is not to be regarded as the purchase of a new or further interest in

the land.    The application of the doctrine of equitable con-
version, in my opinion, furnishes a solution of the difficulty
in this class of cases.    By a contract for the sale of land,
the vendor becomes the trustee of the legal title for the
vendee, and the vendee, the trustee of the vendor, as to the
unpaid purchase money.    (*Story's Equity*, § 790 *and seq.*)
This is the view of a court of equity.    A court of law looks
only at the legal title.    Hence it permits a judgment creditor
to subject the land to a sale on execution, though the judg-
ment debtor had, before the docketing of the judgment,
converted it into personalty by contracting to convey it
and receiving the obligation of the purchaser for the con-
sideration.    But when the parties go into equity, as they
have done in this case, the state of the legal title becomes im-
material, and the question is whether the party claiming the
purchase money has the better equity.    If it appear, as I
think it does here, that he has stood by and permitted it to
be paid over to the person originally entitled, without giving
notice of the transfer to himself of the right to receive it, he
cannot be heard to question the payment made under such
circumstances.

The judgment of the supreme court should be modified,
and a judgment should be given in accordance with this
opinion, to be *settled* by one of the judges of this court.
The defendant should pay the costs in the supreme court.

HAND, J.    It was proved that the defendant knew that
the plaintiff was in possession of the land in question;
but I find no proof that Corning, the judgment creditor and
purchaser at the sheriff's sale, had such knowledge.    But
Corning was the creditor and consequently paid nothing
upon the sale (2 *Stor. Eq.*, § 1503 *b.*), and the defendant of
course must have been apprised of that fact by the certificate
itself.    But admitting that the defendant has the same protec-
tion as Corning, the possession of the plaintiff was sufficient
notice, or sufficient to put a purchaser upon inquiry

Moyer *against* Hinman.

(*Tuttle* v. *Jackson*, 6 *Wend.*, 213; *Gouverneur* v. *Lynch*, 2 *Paige*, 300; *Chesterman* v. *Gardner*, 5 *John. C. R.*, 29; *Jones* v. *Smith*, 1 *Hare*, 43 *and Am. Notes*; 2 *Barb. C. R.*, 555; 3 *Id.*, 316; 3 *Paige*, 421; *Dart on V. and P.*, 408; 2 *Ves. Jr.*, 447.) We must then presume that the judgment creditor and the defendant both knew of the rights and interests of the plaintiff, or treat them as possessing that knowledge; and that the plaintiff had no knowledge of the judgment or of the sale under it until after he had made the payment now in question, was found as a fact by the court. The supreme court decided that the payment to the vendor after the sale by virtue of the judgment, could not be allowed to the plaintiff. I am unable to draw any distinction between the payments after the judgment and before sale, and the payment in question which was made after the sale. It is found that the plaintiff had no actual notice, and the sale by the sheriff was no more notice to him than the judgment. The object of notice on a sale of real estate is not to give information to the judgment debtor or those holding under him, but to make a fair sale of the property. The statute does not require notice to be given to the judgment debtor or an occupant or incumbrancer, and a sale to a *bona fide* purchaser without any notice is valid. (2 *R. S.*, 369, § 40; 10 *Barb.*, 467.) This case then, is narrowed down to the single question, whether a purchaser of land who, by virtue of the contract of purchase, pays a part of the consideration and enters into possession and makes improvements, is bound to take notice of a subsequent judgment against the vendor or a sale under it, of which he has no actual notice? The defendant contends that the legal title being in the vendor by force of the statute, the judgment became a charge upon the land from the time that it was docketed. (2 *R. S.*, 359, § 3.) And that in law and in equity, it was a lien to the extent of the purchase money unpaid at the time it was docketed. As a general rule, it is a lien upon the unpaid purchase money. (*Dart on V. and*

P., 219, 238; *Bogert* v. *Perry*, 17 *John. R.*, 351; *Gouverneur* v. *Lynch*, 2 *Paige*, 300.) And if the purchaser in possession is bound to take notice of an after recovered judgment, this case was correctly decided by the supreme court. If, however, that be the true rule in such cases, it is because of the positive terms of the statute, for I think it will be seen that a different doctrine prevails in analagous cases.

I suppose it to be well settled here and in England, that the lien of a judgment is subject to all equities that existed at the time it was recovered. (*In the matter of Howe*, 1 *Paige*, 125; *Ells* v. *Tousley*, *id.*, 280; *White* v. *Carpenter*, 2 *id.*, 217; *Keirsted* v. *Avery*, 4 *id.*, 9; *Buchan* v. *Sumner*, 2 *Barb. C. R.*, 165; *Wilkes* v. *Harper*, *id.*, 338; *Parks* v. *Jackson*, 11 *Wend.*, 442; *Burgh* v. *Francis*, 1 *Eq. Ca. Ab.*, 320; *Finch* v. *E. Winchelsea*, 1 *P. Wms.*, 282; *and see Jones* v. *Smith*, 1 *Hare*, 43, *S. C.*, 1 *Phill.*, 244.) A judgment being a general lien is bound by a particular equity. This principle was admitted by the court below, and applied to a certain extent. But had the plaintiff no equity beyond what he had paid at the time the judgment was docketed? This question, it seems to me, was answered by the case of *Parks* v. *Jackson* (11 *Wend.*, 442). In that case payments were made not only after the judgment, but *pendente lite*, and yet the vendee prevailed. It is true these payments were made to (and the deeds given by) the fraudulent grantee of the debtors who had the apparent title; but the case principally turned upon the point that no actual notice had been given to the vendee in possession. It is said that the vendor is trustee of the land and the purchaser of the price. If the contract made the vendor a mere trustee in the ordinary sense of that term, clearly, and upon familiar principles, a court of equity would protect the trust fund against the judgment creditors of the trustee. But in truth, he is trustee only *sub modo;* and if the purchaser is not entitled to notice, the judgment creditor has a right to work out his legal lien through his judgment to the extent the

interests of the vendee are not protected in equity, notwithstanding the contract of sale; for the supposed use is not executed and the title remains in the vendor, and did so before our Revised Statutes. (*See Bogert* v. *Perry*, 17 *John. R.*, 351; *Wall* v. *Bright*, 1 *Jacob & Walker's R.*, 474.) The unpaid vendor, as was said in *Wall* v. *Bright*, is not a mere trustee, though he is in progress towards it. Registry of a deed or mortgage is constructive notice only to those subsequently acquiring some interest under the grantor or mortgagor. (*Stuyvesant v. Hall*, 2 *Barb. C. R.*, 151; *Stuyvesant* v. *Hone*, 1 *Sandf. C. R.*, 419.) And this principle obtains more strongly against a judgment which is only a general lien in this state, and had been applied to protect a prior equitable claim as an unregistered or equitable mortgage, or even a contract for a mortgage. *In Ells* v. *Tousley* (1 *Paige*, 280), the chancellor said "the lien of a judgment does not, in equity, attach upon the mere legal title to the land in the defendant, when the equitable title is in a third person." In the well considered case of *Langton* v. *Horton*, the equitable claim to the fruits of a whaling voyage took precedence of the legal title. (1 *Hare*, 549.) And the vice-chancellor laid great stress upon the fact, that the equitable claimant first obtained possession of the property. *Lodge* v. *Lyseley* is also a strong case for the plaintiff. (4 *Sim.* 70.) G. C. M., tenant for life, and F. C. M., tenant in remainder in tail, joined in conveying the estate to trustees to sell and pay a sum to G. C. M., and the residue to F. C. M. The trustees contracted to sell the estate to the defendant, after which judgments were recovered against G. C. M.; and it was held that the existence of the judgments was no objection to the title. It was admitted by the counsel for the vendors and trustees, Sir E. Sugden, Mr. Preston and Mr. Wilbraham, that where an estate had been conveyed to trustees, it might be affected by a judgment confessed by the grantor, so long as it remained vested in the trustees. But they contended that where a binding contract for the

sale of the estate had been concluded, no judgment could be executed upon it.    And the vice-chancellor, in commenting upon the opinion of Sergeant Hill, in a case submitted to him (*see note a*, 4 *Madd. R.*, 506), said he should not have given the opinion that Sergeant Hill did, because it appeared to him that from the time H. A. S., entered into binding contracts to sell his estates to purchasers, he not having judgments against him at the time, the purchaser had a right to file a bill against him and have the legal estate conveyed; and if he had subsequently confessed a judgment, that judgment never could have impeded the progress of the legal estate to them.    Now, the case put to Sergeant Hill was, that H. A. S. was seized in fee simple, subject to his mother's jointure and younger children's portions; and he contracted to sell in parcels to different purchasers and then conveyed to trustees to sell and convey the estate to the purchasers and invest part of the money in trust, to indemnify the latter against the jointure and the portions, and pay the residue to H. A. S.    After the trust deed was given, H. A. S. confessed a judgment.    Part of the purchase money had been paid and invested.    He held that the trustees would be safe in paying the money as to judgments of which they had had no notice, but would not be as to those of which they had.    (*And see Forth* v. *D. Norfolk*, 4 *Madd. R.*, 502.)    Some remarks which were dropped by the lord chancellor in *Whitworth* v. *Gangain*, on a motion (1 *Cr. and Ph.*, 330), might seem more favorable to the judgment creditor; but on the hearing of that cause before Sir James Wigram (3 *Hare*, 416), he decided that an equitable mortgagee of lands was entitled, in equity, to enforce his charge in priority to a creditor of the mortgagor, who, without notice of the equitable mortgage, had subsequently thereto, recovered judgment against the mortgagor and obtained actual possession of the land.    He held that the equitable interest of a purchaser for value before conveyance, would

be preferred in equity to the claim of a judgment creditor of the vendor. (*And in Burgh* v. *Francis*, 1 *Eq. Ca. Ab.*, 320.)

The argument on the part of the defendant seems to be that, as between the judgment creditor and a *bona fide* purchaser without notice, as the title had not passed and the purchase money had not all been paid when the judgment was recovered, equity will leave the law to take its course, and that the statute gives and enforces the lien. It is true, that in some of the English cases we have noticed, the mere legal title may be said to have passed out of the vendor into trustees before the judgment; and it seems there it cannot be claimed, since *Wall* v̇. *Bright*, without disregarding that case, that the vendor, who had not been wholly paid, is a mere trustee. And in some of the cases we have cited, his interest would have been liable to the judgment if notice had been given in season; and although the effect of judgments at that time in England was different from that of judgments here, still the adjudged cases show how rigidly equity has required the subsequent creditor to give notice. And the cause now under consideration illustrates the justice and propriety of the rule. The plaintiff made the contract for the land about three years before the judgment. and the principal of the latter was not payable until 1847; and no sale was attempted until about six years after it was recovered. And then, without giving notice to the vendee in possession who had been suffered to continue his payments to the vendor and make improvements, and after the land had become double or treble the value of the contract price, the land was sold on the execution for one dollar per acre, of which sale the vendee had no actual notice until it was too late for the judgment debtor or his grantee to redeem. Even if he had known of the sale he could not have redeemed at law. (*Lathrop* v. *Ferguson*, 22 *Wend.*, 116.) This seems to be an argument that the purchaser at the sheriff's sale should be considered as holding the legal estate in trust for him.

If the statute compells the plaintiff to take notice of judgments subsequently recovered, on the ground that docketing them is constructive notice, the hardship of the case is no answer to that requirement. But I find nothing in this statute changing the rule before existing as to the respective rights of the owner of the equitable title and the judgment creditor. It seems to me that the condition of a vendee in possession, fulfilling his contract of purchase, is certainly as favorable as that of an equitable mortgagee. And that upon principle and authority, we should hold that he is entitled to actual notice of subsequent judgments and other incumbrances. If so, it follows that the plaintiff should have been allowed the payment made by him to Schroeppel in October, 1845, and that the judgment of the supreme court should be modified and judgment given as directed in the foregoing opinion of Denio, J.

Judgment accordingly.[1]