ORANGE R. YOUNG, APPELLANT, *v.* THOMAS J. GUY, IMPLEADED, WITH OTHERS, RESPONDENTS.

*Contract of sale — rights of buyer — mortgagee with notice of, how affected by — failure to give notice of mortgage — effect of — record — not notice.*

One Scribner having contracted to sell certain real estate to defendant Guy, subsequently mortgaged the same to the plaintiff, who had notice of the contract. The mortgage was recorded when given. Guy, having no actual notice of the mortgage, subsequently took a deed from Scribner, and paid up all the purchase-price, except $1,300, for which he gave back a mortgage to Scribner, who subsequently assigned the same to defendant Flack, Flack having no notice of the plaintiff's mortgage. After the commencement of this action, brought to foreclose plaintiff's mortgage, and service therein on Guy, Guy paid Flack the amount due on the $1,300 mortgage. *Held,*

That plaintiff's mortgage was a lien on the premises to the extent of the unpaid purchase-money.

That Guy was protected as to all payments made before he had notice of plaintiff's mortgage.

That the recording of plaintiff's mortgage was not notice to Guy.

That the giving of the $1,300 mortgage to Scribner did not constitute a payment.

That the assignee of the $1,300 mortgage to Scribner had no greater rights than Scribner himself would have had.

That the commencement of this action was a notice to Guy of plaintiff's rights, and that after such notice Guy was not protected in making the subsequent payment of the $1,300 mortgage to Flack.

That plaintiff was not bound to bring an equity action seeking an assignment to himself of the Flack mortgage, or enjoining Guy from paying the same; that this action in foreclosure properly presented his claim. (LEARNED, P. J., dissenting.)

APPEAL from the judgment of the Rensselaer Special Term, dismissing the complaint as to the defendant Thomas J. Guy and Delia, his wife, and rendering judgment in their favor, and against the plaintiff, for costs, and granting the usual decree of foreclosure and sale against the other defendants.

The action was brought to foreclose a mortgage. Upon the trial it appeared that, prior to the 20th day of October, 1874, the defendant Scribner was the owner of Nos. 3 and 5 St. Paul's place, in the city of Troy. No. 3 was incumbered as follows:

| | |
|---|---:|
| Mortgage to Troy Savings Bank | $2,000 00 |
| Mortgage to Kennedy, held by Flack | 1,057 86 |
| Judgment held by the Warrens | 1,307 44 |
| Judgment held by the Smarts | 411 49 |
| | $4,776 79 |

On the 20th day of October, 1874, the said Scribner and the defendant Guy entered into an agreement in writing, by which Scribner agreed to sell to Guy lot No. 3, and to deed and give possession on the 1st day of May, 1875, for the sum of $8,500, of which $2,200 was to be, and was, paid on the execution of the contract, and the remainder was to be paid, or secured, on the delivery of the deed. Out of this $2,200 Scribner paid the Smart judgment of $411.49. On the 2d day of February, 1875, Scribner executed a mortgage of lots 3 and 5 St. Paul's place, to the plaintiff, for $7,000, to secure two notes then held by the plaintiff, amounting, with interest, to about that sum. When this mortgage was given, the plaintiff had notice of the contract of sale with Guy. On the 1st day of May, 1875, Guy, without notice of the plaintiff's mortgage, accepted a deed from Scribner of the premises in question, and paid him $3,000 in money, and assumed the $2,000 savings bank mortgage. He also gave a mortgage to Scribner of $1,300, which made up the balance of the purchase-money of $8,500. Plaintiff had notice of this mortgage soon after its execution. A part of the money so paid to Scribner was used to pay off the Kennedy-Flack mortgage and the Warren judgment above mentioned. Some time afterwards — the exact time does not appear — Scribner assigned the $1,300 mortgage from Guy, to Flack brothers. This mortgage was given May 1, 1875, and the plaintiff's mortgage was then on record, having been recorded February 3, 1875. This action was commenced on the 11th day of February, 1876, and the papers served on the defendants, Guy and wife, March 10, 1876. After the action had been so commenced and the papers so served, the

defendant Guy, with full knowledge of all the facts, paid the $1,300 of the purchase-money, then unpaid, to Flack brothers, the holders of the mortgage given by him to Scribner.

The plaintiff claimed at the trial that he had a lien on lot No. 3, St. Paul's place, at least to the extent of the $1,300 of the purchase-money which remained unpaid until after the defendant was fully notified of the plaintiff's mortgage, by the service of the foreclosure papers. The judge refused to sustain that view, and dismissed the complaint as to the defendants, Guy and wife, with costs, and the plaintiff appealed.

*Esek Cowen*, for the appellant.

*R. A. Parmenter*, for the respondent.

BOCKES, J.:

The defendant, Guy, held "No 3, St. Paul's place," under a contract of purchase from Scribner, the owner of the fee, when the latter gave to the plaintiff the mortgage on those premises sought to be foreclosed in this action. The mortgage then became a lien on "No. 3," but only to the extent of the unpaid purchase-money, and it would lose its lien as to all purchase-moneys subsequently paid by Guy to Scribner on the contract, if paid in good faith without notice to the former of the mortgage lien. The rule of law applicable to the case as above stated is clearly laid down in *Moyer* v. *Hinman* (13 *N. Y.*, 180); see, also, *Trustees of Union College* v. *Wheeler* (61 N. Y., 88). Guy was entitled to protection for all payments made to Scribner on the contract of purchase until he had notice of the plaintiff's mortgage lien, and the recording of that mortgage was not such notice. (See cases above cited.) He was, therefore, protected in his payments made prior to, and at the time he received his deed from Scribner pursuant to the contract of purchase, May 1, 1875, including the liens on the lot then assumed by him, for he was then without notice of the plaintiff's mortgage. There then remained but $1,300 of the purchase-price unpaid, and for this sum he gave Scribner his bond with a mortgage covering the premises. The giving of the bond and mortgage by Guy to Scribner was not payment of the $1,300. (*Hill* v.

*Beebe*, 13 N. Y., 556.) The plaintiff's mortgage lien therefore yet continued to this extent, liable however to divesture or defeat, by payment of the Guy mortgage by the latter in good faith without notice of the lien. It seems that this balance of the purchase-money was not paid until the plaintiff commenced the foreclosure of his mortgage. Guy being made a party to the action, *then* had notice of the lien and claim, and there yet remained this $1,300 of purchase-money unpaid by him. Now if the bond and mortgage given by Guy to Scribner for this sum had still been held and owned by the latter, there could have been no question but that the plaintiff's lien would have prevailed over any claim he, Scribner, could have asserted under Guy's mortgage to him. The plaintiff in that case would have had a superior right in equity to any which Scribner could interpose. But the bond and mortgage given by Guy had been assigned by Scribner to the Flack brothers, and Guy paid and satisfied them to those assignees, with knowledge, however, by him of the plaintiff's position and claim. Now, had Scribner remained the owner of the bond and mortgage, and had Guy made this payment to him, having notice of the plaintiff's claim, he, Guy, would not have been protected in it against the claim and lien of the plaintiff. Is Guy any better protected in the payment because made to the Flacks, the assignees of Scribner? It should be here noticed that the Flacks were also parties to this action, if that fact be of any importance, and hence, like Guy, had notice of the plaintiff's claim, when they received payment from him. It is now the settled rule of law, that an assignee of a bond and mortgage takes the exact position of his vendor. (*Bush* v. *Lathrop*, 22 N. Y., 535; *Trustees of Union College* v. *Wheeler*, 61 N. Y., 88; *Greene* v. *Warnick*, 64 N. Y., 220.) In the last case cited it was held, that an assignee of a mortgage takes it not only subject to all equities existing between the parties to the instrument, but to the equities which third persons could enforce against the assignor. The plaintiff's claim and lien were therefore unimpaired by the assignment of the Guy bond and mortgage to the Flacks. His right and equity remained to him to the extent of the $1,300 unpaid purchase-money, inasmuch as Guy had notice of his lien and claim to it while it yet remained unpaid. It follows that Guy cannot be protected by his payment to the Flacks against the

plaintiff's lien.　The learned judge who directed judgment in this case was, therefore, in error in holding No. 3, was, by reason of the payment by Guy to the Flacks, released and discharged from the operation of the plaintiff's mortgage.

The learned judge has found that the plaintiff never asserted any other lien or claim except the ordinary mortgage lien on the premises, evidenced by his mortgage here sought to be foreclosed. The legal aspect of the case is not at all changed by this finding. All right that he had against the premises was his mortgage lien. This he asserted by his action to foreclose the mortgage.　Whether he had a lien, and if he had, the extent of it, were subjects involved in the action.　All he could do was to assert his lien under his mortgage.　He had no claim upon the Guy mortgage, nor upon the unpaid purchase-money.　His claim was on the land by virtue of his mortgage lien, limited in amount to the unpaid purchase-money.　The action presents his claim in its true and only aspect. He could make it in no other way than on the facts stated in the complaint.　He had no right to demand a surrender or an assignment to himself of the Guy mortgage, nor could he enjoin Guy from paying it, if the latter was disposed so to do.　All he was required to do was to give Guy notice of his lien, after which the latter was bound to respect it.　The judgment appealed from must be reversed.

BOARDMAN, J., concurred.

LEARNED, P. J. (dissenting):

A fact should be noticed in regard to the case of *Moyer* v. *Hinman* (13 N. Y., 180), which has been cited on this argument. That is, that the purchaser was in possession of the land, and that his possession was, therefore, constructive notice to all the world that he had some rights to the land.

In the present case it is found, as a fact, that the plaintiff had actual notice of the contract for sale, at the time when he took his mortgage.　It is not necessary, therefore, to inquire what his rights would have been, in case he had had no notice of the contract, either actual or constructive.

The plaintiff then knew, when he took his mortgage, that Scribner

was bound by his contract, to convey to Guy, upon receiving payment of the contract-price. And therefore, he stood substantially as an assignee of Scribner's interest under the contract, holding the same as security for his debt against Scribner. If then he had desired to protect himself, and to prevent Guy from dealing with Scribner as the absolute owner of the title, he should at once have notified Guy of his ownership of Scribner's interest. This he did not do. And, in ignorance of the rights of the plaintiff, Guy paid and secured the purchase-price of the land and took his deed from Scribner, as he might lawfully do. Indeed, it was only from Scribner that Guy could have obtained a deed.

At the time of receiving the deed and completing the purchase, Guy might have paid the whole of the purchase-money to Scribner, because he had no notice of the plaintiff's mortgage. And although he did not pay the whole of the purchase-money, yet he gave to Scribner a bond and mortgage for that part of the purchase-money which he did not otherwise pay. To this bond and mortgage Guy had no defense. For it was given for a good consideration, the conveyance of the land. And, when it was given, Guy had no notice that Scribner's interest in the contract had been transferred as collateral to the debt owing to the plaintiff.

This is like any case of an assignment by one party of his interest in a contract non-negotiable. The other party to the contract, not being notified of the assignment, may safely deal with the original party. And if, in such dealing, instead of paying money, he gives a bond, the bond is valid. If Guy might have safely paid Scribner the amount owing on the contract, then it follows that the bond given by Guy to Scribner was a valid obligation, to which Guy had no defense.

If then the bond and the accompanying mortgage were valid, they did not lose their validity by the transfer to the Flacks. And Guy was as much bound to pay the Flacks, as he had been to pay Scribner. It is very possible that the plaintiff was, in equity, entitled to compel Scribner to assign that bond and mortgage to him. I see no reason to doubt that he could have compelled such a transfer before Scribner had assigned the bond and mortgage to the Flacks. But he did not do this, although he knew of this bond and mortgage, directly after the execution thereof. This right he would

have had, on the ground that by conveying the property and taking this bond and mortgage in part payment, Scribner was equitably bound to give the plaintiff security on the bond and mortgage which he had before had on the land. But this right would not have been an assertion that the bond and mortgage were invalid. It would have been an assertion that the bond and mortgage were valid, and that Scribner was equitably bound to transfer them to the plaintiff. Guy would still have been liable to pay them. To illustrate this, suppose that Scribner, instead of giving a bond and mortgage to Young, had assigned to him the contract of sale as collateral to a debt. Guy, having no notice of this, could have safely paid Scribner, or could have given a bond and mortgage. The bond and mortgage would have been valid. Guy would have been liable to pay the same to any legal holder thereof. And the plaintiff's only remedy would have been, to bring a suit in equity to compel a transfer to him of the bond and mortgage by the holder thereof.

Even admitting that the Flacks took the bond and mortgage, subject to the same equity which might be enforced by an action brought to recover the bond and mortgage, then the difficulty is that the plaintiff has not brought an action to enforce his equitable right to that bond and mortgage. His complaint is simply one of foreclosure. He alleges that the defendants, including the Flacks, have some interests in the premises which have accrued subsequently to his own mortgage. His action necessarily claims to cut off altogether the mortgage given by Guy as a second lien.

There is nothing in the complaint setting forth the mortgage given by Guy, and claiming that the plaintiff is the equitable owner and that the Flacks should assign it to him. There is nothing, therefore, in the action to apprise Guy of this equitable claim. Guy was, therefore, at liberty to pay to the legal owner. If Guy had been sued by the Flacks, he would have been in no position to assert that the plaintiff was the equitable owner of the mortgage, for the plaintiff had made no such claim.

If the plaintiff had really thought that he had any equitable right to the bond and mortgage held by the Flacks, he should have brought an action against them and Guy, asking to restrain the payment of the money and to adjudge that the bond and mortgage be transferred to him. Instead of doing this, he commenced a fore-

closure of his own mortgage, claiming a priority thereunder both to Guy and to the Flacks. If his own mortgage was, in fact, prior in right to the mortgage given by Guy, then the plaintiff had no equitable claim to that mortgage. He has no right to change his simple action of foreclosure into a claim entirely inconsistent with it.

A debtor who is ready to pay his debt to the legal holder thereof, is certainly not bound to assert the alleged equitable rights thereto of some third party, which the party neglects to assert himself, and which by his own litigation he disavows.

I think the judgment should be affirmed.

Judgment reversed and new trial granted, costs to abide event.