## CROFUT *vs.* THE BROOKLYN FERRY COMPANY.

The jurisdiction of the city court of Brooklyn being declared, by the act establishing such court, to extend to actions against corporations created under the laws of the state and transacting their general business within said city, or established by law therein; *Held* that such court had jurisdiction of an action brought against the Brooklyn Ferry Company, to recover damages for an injury to the plaintiff's boat, caused by a collision.

*Held also,* that in such an action, it was erroneous to ask the pilot of the defendants' boat, "was the collision caused by any negligence of yours;" and again, "From what you discovered of the tug in coming down, was she in the fault;" these inquiries calling for the *opinion* of the witness upon the questions put in issue by the pleadings, and which were to be determined by the jury.

APPEAL from a judgment of the city court of Brooklyn, entered upon the verdict of a jury. The action was brought to recover for damages to the canal boat J. L. Page, belonging to the plaintiff, alleged to have occurred on the 2d day of December, 1859, from a collision with the ferry boat Canada, on the waters of the East river, in the harbor of

New York, while the Canada was on a trip from Brooklyn to New York, through the wrongful, careless and negligent conduct of the defendant, and without any fault of the plaintiff. Before the jury was empanneled, the counsel for the defendant moved to dismiss the complaint, for the want of jurisdiction in this court over the action, because it was a subject wholly within the jurisdiction of admiralty, and because the complaint did not state facts sufficient to constitute a cause of action, and because it appeared by the complaint that the cause of action did not arise within the city of Brooklyn. The court overruled the objection. On the testimony being closed, the defendant's counsel renewed the motion for nonsuit, on the same grounds as before, and upon the further ground that the plaintiff had not proved that the defendant was a corporation transacting its general business in the city of Brooklyn, or established by law therein. The court denied the motion, and the defendant's counsel excepted. The jury found a verdict in favor of the plaintiff, and assessed his damages at $1400. The court thereupon, on the motion of the defendant's counsel, granted a stay of proceedings in the case, with liberty to move for a new trial upon the judge's minutes. At the same term of the court, a motion was made by the defendant's counsel, on the judge's minutes, to set aside the verdict, and for a new trial upon the exceptions taken by the defendant at the trial, and upon the ground of the insufficiency of evidence to warrant said verdict, and upon the the ground of excessive damages. Which motion, after argument, was denied by the court, with costs, and an order to that effect made; from which order, and the judgment entered on the verdict, the defendant appealed.

*C. C. Egan*, for the appellant.   I. The court should have dismissed the complaint on the defendant's motion, before the jury were empanneled.   (1.) For want of jurisdiction in the court over the action.   It is an action over which the courts of admiralty have jurisdiction, exclusive of inferior

Crofut *v.* The Brooklyn Ferry Co.

courts of limited local jurisdiction, by statute. (*Benedict's Admiralty, p.* 175, § 312. *U. S. Supreme Court, rule* 157, 5 *How. Rep.* 441. *Davies' Rep.* 193, 360. 7 *Jurist,* 999.) Because it appears from the complaint that the cause of action did not arise within the city of Brooklyn, but on the waters of the East river, in the harbor of New York. The boundary of the county of New York is low water mark on Long Island shore. (1 *R. S. 5th ed.* 130.) The county of Kings is bounded easterly by Queens county, and northerly by the county of New York. (*Id.*) The city of Brooklyn comprises all that part of the county of Kings bounded easterly by the town of Newtown, Queens county, south by the towns of New Lotts, Flatbush and New Utrecht, and west by the town of New Utrecht and the bay of New York, and north by the East river. (*Laws of* 1854, *ch.* 384, *tit.* 1, § 1, *p.* 829.) The act creating the city court of Brooklyn, (*Laws of* 1849, *chap.* 125, *p.* 170,) declares that the jurisdiction of the court shall extend, 1st. To the actions enumerated in section 103 of the code of procedure, when the cause of action shall have arisen, or the subject of the action shall be situated, within the said city. 2d. To all other actions where all the defendants shall reside or be personally served with the summons within said city. 3d. To actions against corporations created under the laws of this state, and transacting their general business within said city, or established by law therein. The reference is to section 103 of the code of 1848, which enumerates, among other actions, the following : "5. For injuries to the person or personal property." Therefore, for this court to acquire jurisdiction of this action, it is necessary that the cause of action should have arisen within the city of Brooklyn, and that the defendant should be a corporation transacting its general business or established by law therein. (2.) Because the complaint did not state facts sufficient to constitute a cause of action. The complaint does not allege that the defendant is a corporation transacting its general business in the city of Brooklyn or established

by law therein, or that the cause of action arose within that city. The city court of Brooklyn being a court of limited jurisdiction, it is necessary that the complaint should affirmatively show that it has jurisdiction of the action. (*Simons* v. *De Bare*, 4 *Bosw.* 547. *Frees* v. *Ford*, 2 *Selden*, 176. *Bloom* v. *Burdick*, 1 *Hill*, 139. *Kundolf* v. *Thalheimer*, 2 *Kern.* 593.)

II. The service of the summons within the city of Brooklyn, upon a defendant, in an action of this nature, even though the defendant is a resident of said city, or a corporation transacting its general business, or established by law in said city, cannot confer jurisdiction upon this court, unless the cause of action arose in said city. (*Laws of* 1849, *ch.* 125, *p.* 170, *establishing the city court of Brooklyn.*)

III. The court should have granted the motion for nonsuit at the close of the plaintiff's testimony.

IV. The court should have granted the defendant's motion for nonsuit, after the close of the testimony: (1.) For the same reason as specified in the above points. (2.) Because the plaintiff had not proved that the defendant was a corporation *transacting its general business*, or *established by law in the city of Brooklyn*. The office of the company, where its books and records are kept, where the meeting of the directors and the elections of its officers are held, is in New-York. The general business of the company is that business to transact which it was chartered, in this case the running of a ferry, the business of which was transacted on the waters of the East river and harbor of New-York, which are within the limits of the city and county of New York; no part of the general business of the company was conducted in the city of Brooklyn. (*Hoyt* v. *Thompson*, 19 *N. Y. Rep.* 207. *Western Trans. Co.* v. *Scheu*, *Id.* 408. 1 *R. S.* 389, § 6.) The taxes upon the personal property of the defendant, viz: its capital stock, are levied and paid in the city and county of New York, where its office is. This gives the company a local status or habitation. It is not by law establish-

Crofut *v.* The Brooklyn Ferry Co.

ed in the city of Brooklyn, but in the county of New York. It is established by virtue of chapter 135 of the laws of 1853, and the certificate required to be filed under said act, which declares that the ferries to be run by this company shall be within the county of New York. The filing of a duplicate certificate of organization in Kings county was unnecessary, not required by the statute, and does not establish the company in said county. If a certificate of organization under said act can establish a corporation in any particular part at all, it is in such *county or counties only* in which, as stated in such certificate, a *ferry is to be established.* The duplicate certificate introduced in evidence is not sufficient proof that the company was established in the city of Brooklyn. If proof at all as to the locality of the company, it was proof only of its location in the county of Kings.

*R. H. Huntley,* for the plaintiff. I. The city court of Brooklyn had jurisdiction to try this cause. (1.) The Brooklyn Ferry Company is a corporation created under the laws of this state, and established by law in the city of Brooklyn. (2 *R. S.* 807, *5th ed.* §§ 1, 2, 4, 11.) The certificate of incorporation was filed in the clerk's office of the county of Kings, and a *duplicate* certificate was filed in New York, and also in the office of the secretary of state. (2.) The city court act (*Sess. L.* 1849, *p.* 170, § 2, *sub.* 3) enacts that the jurisdiction of the city court of Brooklyn "shall extend to actions against corporations created under the laws of this state, and transacting their general business within said city, *or established by law therein.*" (3.) The fact that this corporation elects its officers in the city of New York, does not locate it there; nor does the place where the directors meet decide or affect the location of the corporation. (*McCall* v. *Byram Manufacturing Company,* 6 *Conn. R.* 458.) (4.) There is no force in the objection that admiralty courts alone have jurisdiction to try causes for collision on the high seas, or on tide water. Common law courts have jurisdiction of such

causes, as well as admiralty courts. (*Percival* v. *Hickey,* 18 *John.* 291, *and cases there cited.* 1 *U. S. Stat. at Large,* 76, § 9.)

II. The negligence of the defendant was clearly proved.

III. The damages found by the jury were not excessive.

IV. There is no ground for objection to the judge's charge, or to his refusal to charge as requested.

*By the Court,* BROWN, J. The defendant is a corporation, formed under the act of the 9th April, 1853, to authorize the formation of corporations for ferry purposes. The certificate of incorporation, which was made a part of the evidence upon the trial in the city court of Brooklyn, declares that the ferries which the associates have agreed to form, and which are to be established and conducted by the corporation, "shall run from the city of New York to the city of Brooklyn, and from the city of Brooklyn to the city of New York." Duplicates of this certificate, duly acknowledged by the associates, were filed in the office of the clerk of the county of Kings, in the office of the clerk of the city and county of New York, and also in the office of the secretary of state. This is in obedience to the directions of the first section of the act, which are, that a certificate or a copy thereof, duly executed and acknowledged, shall be filed in the clerk's office of the county or counties in which such ferry shall be or is intended to be established, and also in the office of the secretary of the state. The business of the company consists in the transportation of passengers and property from one city to the other, across the waters of the East river. It has an office and place of business in each city, where it disposes of its tickets or receives the ferriage, and where the passengers are received and forwarded to their destination. That the books of the company are kept at the office of its attorney in Beaver street, New York, where the directors sometimes meet, and that it is assessed for personal property in that city, does not determine where the corporation is estab-

lished. If these facts were conclusive upon the question of the locus of this corporation, its place of establishment must be wholly transitory and ambulatory, and at the will of its officers; for it is just as easy for its attorney to keep his office and the books of the company, and for the directors to meet, in Jersey City as in Beaver street, New York. The certificate of incorporation, with the acts of the company in the exercise of its franchise, show where the corporation is established, and that is both in New York and Brooklyn. This ensues from the nature of the business in which it is engaged. It is a ferry company, and the waters which it crosses lie between the two cities. The ferry is established in, as well as between, the two cities. It takes passengers not from one side—as in some ferries—and lands them upon the other side of the stream; but it takes them from both sides, and lands them upon both sides. The franchise embraces the right of ferriage both ways. It must be established somewhere. It cannot be said to be located and established in one city to the exclusion of the other. It is, in fact, established in both. The jurisdiction of the city court of Brooklyn being declared to extend to actions against corporations created under the laws of the state, and transacting their general business within said city, or established by law therein, (*Sess. Laws* 1849, *p.* 170, § 2, *sub.* 3,) that court had jurisdiction to try the question of collision, which is the subject of controversy in this action.

The action is brought to recover damages for an injury to the canal boat J. L. Page, of which the plaintiff was the owner, from a collision with the defendant's ferry boat Canada, on the waters of the East river, on the 2d December, 1859. At the time, the J. L. Page was with other vessels in tow of the steam tug Secor, going down the river, to which she was fastened by lines in the usual manner. The collision occurred opposite the company's ferry slip or landing, on the New York side, and from 150 to 300 feet therefrom, the river being full of vessels, some twenty in all, going up slowly with

a light wind and little tide.  The Canada was on her trip from the Brooklyn side.  There was evidence to show that she stopped her engine when about 400 feet from the ferry slip, and waited for the vessels to pass.  There appearing to be an opening through the vessels, the Canada got under way, and passing around the stern of one of the vessels, whose sails obstructed the view and concealed the tug from the observation of the pilot of the Canada, she struck the J. L. Page at a right angle, about 35 feet from her bow, going into her about 3 feet.  As soon as the pilot of the Canada discovered the tug with her tow he reversed her engine, but too late to prevent the collision.  Both the ferry boat and the tug boat had stopped, and were stationary just before the collision occurred, and the principal point litigated at the trial was, which of the two got under way first.  Because it is said that if the ferry boat had put herself under headway before the tug, and while the latter was lying still, it was negligence in the latter to run across the bows or course of a vessel under headway at the rate of four miles per hour, which was the speed of the ferry boat at the time of the collision.  There was proof on both sides of this question ; the plaintiff's witnesses averring that the tug, with her tow, was under way before the Canada resumed her motion, while the defendant's witnesses averred the reverse of this fact.  This fact was to be determined exclusively by the jury, and they found in favor of the view maintained by the plaintiff, in which I think they are supported by the weight of the evidence.  It was the duty of the Canada, after she stopped her engine, not to have resumed her headway until the passage in front of her was clear and open—so open, at least, that her pilot might have seen what was behind the canvass which obstructed his view.  In place of doing this, he attempted to pass around the stern of one of the fleet of vessels in his front, and in so doing, her pilot says, "after we started and went ahead 50 feet, we were shut off by the sails of these vessels, so that I could not see the Secor until within

Crofut *v.* The Brooklyn Ferry Co.

50 feet of her, after we came out from behind these vessels." This was an act of sheer negligence, and was doubtless the principal cause of the collision.

Two questions were asked of John Purdy, a witness for the defendant, which were objected to by the plaintiff and overruled. They may be disposed of together. He was first asked, "Was that collision caused by any negligence of yours?" And then again, "From what you discovered of the tug in coming down, was she in fault, and how?" The purpose of these inquiries was nothing less than to elicit the opinion of the witness upon the questions put in issue by the pleadings, and which were to be determined by the jury from all the facts disclosed in the course of the trial. The evidence was properly rejected.

In regard to the amount of the damages, they may be large, but they are not excessive. They are supported by the evidence; at least there is evidence upon which the jury had a right to rely in ascertaining the amount of the recovery. The estimates of the witnesses varied from $700 to $1600. The jury found $1400. as the true measure of damages.

There is nothing in the charge of the court, or in the refusal to charge as requested, which is open to any legal exception.

The judgment should be affirmed.

[Kings General Term, February 10, 1862. *Emott, Brown* and *Lott,* Justices.]