(18 Misc. Rep. 243.)

### LIVINGSTON v. SPERO. (No. 1.)

(Supreme Court, Appellate Term, First Department. October 29, 1896.)

1. EVIDENCE—JUDICIAL NOTICE—DEPOSIT OF EARNEST MONEY.
 A court will take judicial notice that it is not customary to require from a vendor an affidavit as to the condition of his title on making a contract of sale, or to deposit earnest money in a trust company pending the execution of a deed.

2. ASSIGNMENT OF ACCOUNT—VALIDITY—WHEN IT MAY BE QUESTIONED.
 A defendant in an action on an assigned account cannot question the validity of the assignment when it is in writing, under seal, and duly acknowledged.

3. WITNESS—CROSS-EXAMINATION—DISCRETIONARY WITH COURT.
 A trial court has discretion in determining how far a defendant may cross-examine the assignor of an account to affect his credibility; and its decision thereon will not be reviewed except in cases of plain abuse.

Appeal from Sixth district court.

Action by Meyer W. Livingston against Louis Spero. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Oppenheim & Severance (W. F. Severance, of counsel), for appellant.

L. Bronner (M. L. Erlanger, of counsel), for respondent.

McADAM, J. The action was by the plaintiff as assignee of Mitchell L. Erlanger, an attorney at law, to recover $99 for two items,— one for $60, disbursements incurred in searching a title, and the other for professional services rendered in a police-court matter wherein the defendant was complainant, which latter claim was waived upon the trial. The answer was a general denial, with a plea of payment, and counterclaim for $250 damages by reason of the gross negligence of the plaintiff's assignor, by which the defendant was injured to that amount.

On July 24, 1895, the defendant employed Mr. Erlanger to search the title of five certain premises in East 136th street which the defendant on that day purchased for $60,000 from one Jacob Rieser. Before the contract of purchase was signed, Mr. Erlanger inquired of Mr. Rieser and his attorney as to the various incumbrances on the property, and, when these were ascertained, the defendant determined to purchase the same subject to five first mortgages, aggregating $48,000, by paying $1,500 in cash down and $10,500 at the time of the execution of the deed. A contract of purchase was thereupon executed, and $1,500 paid on account of the purchase price. Two checks were given to the order of Rieser, one for $900 and the other for $600. The latter was for commissions due to the brokers, and it was indorsed over to Mr. Erlanger, who retained $250 out of the check on account of fees, the understanding being that this sum should pay him for examining the title, and the defendant should pay the disbursements. The balance of the $600 ($350) was paid to the brokers for their commission. A few days after the contract was signed, it was discovered that foreclosure proceed-

ings were pending, and Mr. Erlanger advised the defendant that he could not, on that account, be compelled to take title. The defendant, however, insisted upon taking title, and paid $600 costs to stop the foreclosure, and this sum was credited on the purchase price, making the cash payment on the contract $2,100, instead of $1,500. On account of this foreclosure, unpaid taxes, and the like, the title could not go through in the manner originally contemplated. After some negotiation certain deductions were allowed to the defendant, and advances made to him, and thus the third mortgage was reduced from $4,400 to $3,300. Mrs. Rieser, the vendor's wife, contributed $350 in cash, and conveyed two pieces of property in Bedford Park, one of which the defendant sold, receiving for his equity $100. These allowances, together with the rents which the defendant had collected, finally enabled the sale to be completed without any substantial loss to the defendant. The defendant denied that he agreed to pay the disbursements attendant upon taking title, and insisted that the entire expense was to be paid by the brokers; but the justice, on conflicting evidence, found for the plaintiff, and awarded $60 for the disbursements incurred. The negligence charged against Erlanger is that, prior to the execution of the contract, he should have obtained an affidavit from the vendor as to the actual condition of the incumbrances upon the property, or should have advised that the $1,500 paid on the contract be deposited in some trust company to await the result of the examination of the title.

The vendor was not induced by Erlanger to sell the property to the defendant, but was taken to Erlanger's office by the latter; and Erlanger had the right to assume that he was pecuniarily able, as well as willing, to carry out his contract, this being the legal presumption. Hart v. Hoffman, 44 How. Prac. 168; Cook v. Kroemeke, 4 Daly, 268; Goss v. Broom, 31 Minn. 484, 18 N. W. 290. The question arises as to how far we may take judicial notice of an attorney's duty in matters of this kind. The court of appeals, in Bookman v. Railroad Co., 137 N. Y., at page 305, 33 N. E., at page 333, held that:

"The nature and operation of the elevated railroads are so notorious that the courts may assume to be acquainted with them; and, from the numerous cases which have come before them, they may take judicial knowledge that they increase the traffic in the wide avenues largely devoted to business purposes, and thus generally promote and increase the business there."

In Frace v. Railroad Co., 143 N. Y. 182, 38 N. E. 102, it was held that the courts may take judicial notice of the fact that certain spark arresters are in common use upon engines or locomotives. And in Anderson v. Blood, 86 Hun, at page 247, 33 N. Y. Supp., at page 233, it was held that the courts may take judicial notice that it is not an uncommon occurrence for a party to make a contract for the purchase of real estate, expecting to resell the same at a profit before he is compelled to complete under his contract.

From the frequency with which contracts for the purchase of real estate have come before the courts, we may, upon the principles of these cases, take judicial notice of the fact that it is not usual, upon the execution of a contract, to take an affidavit from the vendor, or to deposit the earnest money in a trust company; the ownership of

property, the equitable title to which is at once transferred to the vendee upon the making of the contract, being generally sufficient for his security. Moyer v. Hinman, 13 N. Y. 180. If any custom exists which establishes such a practice, it was for the defendant to prove it; for, if the plaintiff's assignor was guilty of any omission of duty which amounted to negligence, the onus of establishing it was upon the defendant. Negligence is not to be inferred, and must always be proved in order to negative the presumption that every one does his duty. Cahill v. Hilton, 106 N. Y. 512, 13 N. E. 339; Pardee v. Kanady, 100 N. Y. 121, 12 N. E. 885. A mere conjecture or a bare possibility of negligence will not suffice. Searles v. Railway Co., 101 N. Y. 662, 5 N. E. 66. The defendant offered no evidence to prove negligence, and evidently left it to be inferred.

The plaintiff called two attorneys, who testified that there was no such custom as asserted by the defendant. They were then interrogated as to whether certain conditions would be evidence of negligence, and testified, under objection and exception, that they would not. The questions were improper, as calling for a conclusion of law, which the court, and not the witnesses, was to decide (Crofut v. Ferry Co., 36 Barb. 201); but the answers in no manner prejudiced the defendant, for there was no evidence in the case establishing negligence, and the testimony objected to was so immaterial that its admission constitutes nothing more nor less than a harmless error, having no effect whatever on the result. Van Epps v. Harnes, 88 Hun, 229, 34 N. Y. Supp. 337; Prior v. Flagler, 13 Misc. Rep. 115, 34 N. Y. Supp. 152; Kenworthy v. Sanford, 13 Misc. Rep. 271, 34 N. Y. Supp. 157; Tenney v. Berger, 93 N. Y. 524; Loder v. Whelpley, 111 N. Y. 247, 18 N. E. 874; Fay v. Muhlker, 1 Misc. Rep. 324, 20 N. Y. Supp. 671.

While Erlanger was on the stand as a witness, the defendant undertook to show by him that the assignment to the plaintiff was without consideration, and that he was still interested in the claim. The assignment was in writing, under seal, duly acknowledged on April 17, 1896. Its object is immaterial. Gardner v. Barden, 34 N. Y. 433. It was good, though not on any consideration (Hays v. Hathorn, 74 N. Y. 486), and a defendant cannot question the consideration (Stone v. Frost, 61 N. Y. 614); and if a plaintiff has a valid transfer as against his assignor, and holds the legal title to the demand, the defendant cannot inquire further (Sheridan v. Mayor, etc., of New York, 68 N. Y. 30). Where one receives a note, agreeing to collect it at his own expense, and to pay a sum to a third person when it is collected, he is the real party in interest. Eaton v. Alger, 47 N. Y. 345.

But the defendant says this was not his object in asking the questions,—that he intended to show that Erlanger was still interested, not for the purpose of impeaching the assignment, but to affect his credibility as a witness. We see no force in this suggestion. The assignor was naturally interested. Though he had assigned the claim, he had by that very act guarantied its existence. In Caton v. Lenox, 5 Rand. (Va.) 47, the court says: "The law does not tolerate that any person should transfer to another a right which he

has not himself." Upon this principle, "in every sale of a chattel there is an implied warranty of its existence, and that the vendor has title to it." Story, Sales, 184, 367. In every assignment of an instrument, the assignor impliedly warrants that it is valid, and the obligor liable to pay it. Howell v. Wilson, 2 Blackf. 418. One who transfers a judgment is held to an implied warranty that there is such a judgment, and that the defendant is liable to pay it. Bank v. Jarvis, 20 N. Y. 226; Ross v. Terry, 63 N. Y. 613; Flandrow v. Hammond, 148 N. Y. 129, 42 N. E. 511. The same rule applies to the transfer of negotiable instruments, and an indorser warrants that the instrument itself and all the prior signatures are genuine, that he has the right to transfer it, and that it is valid and enforceable. 2 Am. & Eng. Enc. Law, 385; Littauer v. Goldman, 72 N. Y. 510; Whitney v. Bank, 45 N. Y. 305; Fake v. Smith, 2 Abb. Dec. 76; Bell v. Dagg, 2 Thomp. & C. 623. In these cases the relation of the trans- ferror to the transaction established interest sufficient, under the common-law rule, to exclude him from the witness stand, though not a party to the action (29 Am. & Eng. Enc. Law, 564; Watson v. Mc- Laren, 19 Wend. 557), with the exception of certain instances, which need not be enumerated. This was because all persons interested, to however small a degree, were excluded from giving evidence in favor of the party to whom that interest inclined them; and the rule was founded upon a presumed want of impartiality in the interested wit- ness. 1 Phil. Ev. (Cowen, H. & E.'s Notes) 24, 25. The legislature concluded to change this rule by allowing the objection to go to the credibility of the witness, not to his competency. Laws 1848, p. 560, § 351. An assignor was, even then, excluded, if he had trans- ferred the thing in action for the purpose of becoming a witness. Id. § 352. This restriction was stricken out three years afterwards. Code 1851, § 399. Finally, on April 13, 1857, section 399 of the Code was amended by allowing parties to actions to become witnesses in their own behalf. Laws 1857, c. 353. All objection to their competency was removed, and the court and jury were to determine the value of their evidence in the light of the interest of the witness, whatever it might be. On the other hand, it cannot be affirmed, as a matter of law, that the jury are bound to give more weight to the testimony of one witness than they accord to that of another, on the ground of interest in the one and a lack of it in the other. 29 Am. & Eng. Enc. Law, 774.

In the present case Erlanger was charged with transferring a claim that had no existence, and with gross negligence as well, thereby im- pugning his integrity, and reflecting upon his professional character. The issue thus raised by the defendant made Erlanger more inter- ested in the ultimate result of the action than his assignee, the plain- tiff, who could be affected only by the loss of the small amount in- volved. The question whether Erlanger received $1 or $60 for the demand assigned could not have affected his credibility, in view of the facts. Truthfulness can hardly be graduated on such scales. While interest may affect the weight to be given to testimony, and the extent of interest, whenever material, become the subject of in-

quiry, it was clearly irrelevant in the form presented here. Erlanger's interest appears in every line of the testimony, and it was impossible to show, by the questions propounded ·to him and overruled by the justice, that it was greater than already appeared, unless the effort was to show that he was not the real party in interest, and that was not its purpose, that defense not having been interposed.

A trial court has a discretion, depending on circumstances, in determining how far the cross-examination to affect credibility shall proceed, and the decision thereon is not the subject of review, except in cases of plain abuse and injustice. Peel v. Kern, 6 Hun, 298; Allen v. Bodine, 6 Barb. 383; Uline v. Railroad Co., 79 N. Y., at page 181; Smith v. Longmire, 15 Wkly. Dig. 353; Bayliss, Tr. Prac. 178. There was no injustice or abuse in the rulings of which the appellant complains, and we are directed "to render judgment according to the justice of the case, without regard to technical errors or defects which do not affect the merits." Code, § 3063, made applicable to district court appeals by section 1438, consolidation act; Marble v. Towman, 5 App. Div. 613, 39 N. Y. Supp. 350.

In Chapin v. Hollister, 7 Lans. 456, 457, the court said:

"There was no error in overruling the question put to the witness as to what the plaintiff gave him for the claim, and the other questions as to the consideration paid by the plaintiff for the cause of action. The assignment was in writing, and expressed value received, which was a sufficient consideration. The evidence is claimed to have been proper as a cross-examination of the witness, who had testified to the value of the property. The amount paid, even if a trifling sum, would not tend to contradict the testimony of the witness in this particular, as a transfer of a claim of this kind is governed by circumstances, and depends upon the solvency of the defendant, the ·charges and expenses of litigation, the indisposition of the original claimant to enter into it, and various other considerations, some of which are purely personal, and could have no direct bearing upon the question of actual damages. ·How far the court should open the door upon a cross-examination to an inquiry which would call out all these matters is, to a considerable extent, a question of discretion; and, as there is no reason to suppose that it was improperly exercised in this case, there was no error in the decision of the justice in this respect."

In Arend v. Steamship Co., 6 Lans. 457, affirmed 53 N. Y. 606, the court said:

"The importer of the cask of wine, after learning that the defendants had suffered a loss of the wine, assigned his claim against the defendants to the plaintiff, who brought the action. The assignor was asked, on cross-examination, what he sold it for to the plaintiff. It was insisted that it would tend to show bias and interest in the witness. The price for which the claim sold was immaterial, and might tend to prejudice the mind of the jury. The assignor had no legal claim against his assignee in respect to the price. Interest or bias does not disqualify a witness. It may be taken into consideration in weighing the value of evidence, but there would be no legitimate inference as to interest or bias against the witness on account of the price."

In King v. Railroad Co., 72 N. Y. 607, one of the plaintiff's attorneys was called as a witness in his behalf, and gave material testimony. Upon cross-examination he testified that his compensation depended in some degree upon the result of the action. He was then asked, "To what extent?" This was objected to, and objection sustained. Held, no error; that the extent of a cross-examination upon a collateral issue as to the credibility of the witness is in the

discretion of the court, and its holding is not the subject of review unless there is an abuse of discretion.

In Davidson v. Miner, 9 How. Prac. 524,—a case which was tried in 1854, when an assignor could be a witness, but a party could not,— it appeared that one Davis had assigned his demand to the plaintiff, taking back from the latter an agreement which formed the consideration for the transfer, wherein the plaintiff agreed to pay Davis $50 for the claim when he collected the same.    Upon the trial the plaintiff offered Davis as a witness. `He was objected to, and excluded on the ground that the action was prosecuted for his immediate benefit.    No other evidence having been offered, the plaintiff was nonsuited.    On granting a new trial the court said:

"Davis clearly had a direct interest in the event of the suit.  He had sold the cause of action for which the suit was brought to the plaintiff, and agreed that the payment of the price should depend upon the plaintiff's success in collecting the demand.  If the plaintiff never collected anything, he never would be liable to pay Davis anything.  When he should succeed in collecting the demand, then, and not till then, would Davis have a right of action against him for the $50 which he had agreed to pay as the consideration of the sale. A clearer case of disqualifying interest at common law could scarcely be put. The witness had agreed that his right of action against the plaintiff should depend upon the plaintiff's success in the suit.  The witness must inevitably gain or lose by the result of the trial in which he is called to testify.  But the Code has declared that no witness shall be excluded on account of his interest in the event of the suit.  To sustain the ruling at the trial, it must appear that it is his suit, in which he is called to testify.  Of this there is no evidence.  It is the plaintiff's suit.  He holds the demand upon which the action is brought by a valid transfer.  He alone has the right to take the conduct of the suit, and, if successful, receives the fruits of it.  He alone, if unsuccessful, is liable for the costs.  In no proper sense of the term can it be said that the suit is prosecuted for the benefit of Davis.  All that can be said is that, if the plaintiff recovers the demand in suit, he will owe the witness $50; if he does not, he will owe him nothing.  Thus, the witness has an interest in the event of the suit, but has no interest in the suit itself.  He cannot discharge the cause of action.  He cannot receive the recovery, if it should be had.  It is not prosecuted for his immediate benefit."

To the same effect see Bridges v. Hyatt, 16 N. Y. 546.

The codifiers, in proposing the insertion in the Code of 1848 of sections 351 and 352, abolishing interest as a ground for excluding witnesses, said:

"The rule * * * which excludes a witness who has an interest in the event of the action * * * appears to rest upon a principle altogether unsound; that is, that the situation of the witness will tempt him to perjury.  The reason strikes at the foundation of human testimony.  The only just inquiry is this: whether the chances of obtaining the truth are greater from the admission or exclusion of the witness.  Who that has any respect for the society in which he lives can doubt that, upon this principle, the witness should be admitted?  The contrary rule implies that, in the majority of instances, men are so corrupted by their interest that they will perjure themselves for it, and that, besides being ·corrupt, they will be so adroit as to deceive courts and juries.  This is contrary to all experience.  In the great majority of instances the witnesses are honest, however much interested, and in most cases of dishonesty the falsehood of the testimony is detected, and deceives none. Absolutely to exclude an interested witness is, therefore, as unsound in theory as it is inconsistent in practice.  It is inconsistent, because the law admits witnesses far more likely to be biased in favor of the party than he who has merely a pecuniary interest.  A father may testify for his son; a child living with his·father, and dependent on his bounty, may appear as his wit-

ness,—nay, as his only witness,—without question. Is the immediate gain of a dollar, by the result of a cause, so potent to outweigh interest, while affection, consanguinity, dependence, are put down as dust in the balance?"

And see 1 Phil. Ev. (Cowen, H. & E.'s Notes) 25.

The opinion of the codifiers presents a powerful argument in answer to the defendant's objection that the value of the testimony given by the assignor, a member of the learned profession of the law, must be measured in dollars and cents, according to the pecuniary interest which he has in an assigned claim of $60, for the exclusion of such testimony sought to be introduced for this purpose presents one of the alleged errors upon which the defendant insists the judgment in favor of the plaintiff must be reversed.  We cannot subscribe to any such view.  It would assume that every assignor, when a witness, has a price at which truth departs,—a contention unworthy of the attention we have given it.

The case was tried upon conflicting evidence, and the justice, as he had the right to do, believed the assignor, who was interested, in preference to the defendant, who was also interested.  The justice saw the witnesses, observed their manner of testifying, and, aided by the inherent probabilities of the situation, was best qualified to judge of their credibility.  The case comes within the rule laid down in Baird v. Mayor, etc., of New York, 96 N. Y. 567, 577, as to the effect which should be given by an appellate tribunal to the special adaptation of the trial court in weighing conflicting statements and inferences when there is evidence on both sides.  See Coldwell-Wilcox Co. v. Sullivan, 3 App. Div. 361, 38 N. Y. Supp. 291.  As is said in Donohue v. Henry, 4 E. D. Smith, 162, 164:

"It is always proper, where the credibility of a witness is involved, and there is anything to affect his testimony, to yield to the opinion of the court or jury before whom such witness is examined, in preference to deciding as his testimony appears on paper. The personal appearance of a witness, the mode of testifying, the degree of candor with which his evidence is given, all have, justly, much influence in deciding the degree of credit to which he is entitled."

In finding for the plaintiff for the performance of the work respecting which the negligence was charged, the justice necessarily decided that the counterclaim founded on such alleged negligence was untenable.  Gates v. Preston, 41 N. Y. 113; Pray v. Hegeman, 98 N. Y. 358.  Consequently, the counterclaim was properly dismissed.

The evidence sustains the recovery, the exceptions are without merit, and the judgment must be affirmed, with costs.  All concur.